## THE STATE OF KANSAS v. A. J. SALISBERRY.

TRESPASS — *Properly Convicted of a Misdemeanor under Statute.* Where S., qualified to homestead land under the laws of the United States, makes a homestead filing upon a tract of land, takes exclusive possession thereof, and sows 14 acres of rye thereon in the fall of 1890, but his filing on the homestead is contested by C., who claims the land, which, on the 31st day of January, 1891, is decided by the secretary of the interior to belong to C. and not S., and soon after, and in March, 1891, S. surrenders the actual possession of the land and crop growing thereon to C., and C. takes peaceable possession thereof, *held*, that S. has no interest or right to the land or to the grain or crop sown on the land; and *further held*, that for unlaw-

fully cutting and carrying away, in June, 1891, the rye from land belonging to C., without his consent and in his absence, S. was properly convicted of a misdemeanor, under ¶ 7157, Gen. Stat. of 1889, relating to trespasses.

## Appeal from Reno District Court.

THE opinion states the case.

*Lewis & Fierce,* for appellant:

We submit that, under the law and the facts of this case, the appellant not only had an interest in the rye in question, but that he was the sole and absolute owner thereof. But suppose we admit, for the sake of the argument of the case, and for that purpose only, that defendant was not the owner of the rye on said 24th day of June, 1891: then and in that case we think the judgment of conviction was and is wrongful, for the reason that the state admits that when defendant sowed the rye in question he was in the legal and rightful possession of the land; at least, it admits that defendant was in possession thereof, under his said homestead filing, and that the seed rye used for the sowing thereof was the seed rye of defendant, and that thereafter, when it ripened, he honestly believed the rye so sown was his rye, and that he had the right to enter upon the land and cut it, in the manner he did, thus negativing the idea of an intent on the part of defendant at the time to commit a crime, within the meaning of the statute; an essential element, we think, necessary to be proven in this case, before the defendant can be legally convicted.

In discussing the subject of the ownership of growing crops, Judge Cooley, in his work upon Torts, says: "Growing crops are the property of the person who has rightfully planted and grown them; therefore crops grown by a tenant are his property. He may mortgage or sell them as such while they are growing, and he may harvest and appropriate them when ripened;" and again, "That where the duration of a lease depends upon some contingency, and it is terminated otherwise

than by the voluntary consent of the tenant himself, the tenant, or his personal representative, is entitled to the growing crops." See Cooley, Torts, pp. 433, 434.

When Salisberry sowed the rye, he did so in good faith, under his said homestead filing, with the sole object in view of cultivating and improving the land and perfecting his title thereto, and he had no means of knowing or reason to believe his right of possession thereof to the land under his said filing would be disturbed, and that he would be enabled under said homestead filing to perfect his title thereto.

Growing crops are the property of the one who has rightfully planted them, and it can make no difference whether the party who plants them is a tenant, or whether he is holding the land under a license. Cooley, Torts, p. 434; see, also, *Rathbone v. Boyd,* 30 Kas. 485. We submit that the United States did not by reason of the said decision of the secretary of the interior upon said contest, which was adverse to defendant, undertake to give any more rights to Cresswell than he would otherwise take under the United States homestead laws, to wit, the right of possession.

*Z. L. Wise,* county attorney, and *D. W. Kent,* for The State:.

Subsequent to the planting and before the trespass complained of, whatever right of occupancy appellant might have had was finally determined against him. After the decision of the secretary of the interior, of date January 31, 1891, he was a mere trespasser upon the land. He was such when Cresswell perfected his entry to the land, and could have been ousted by legal proceedings at any time and before the rye in question "was ready for the sickle." Instead of awaiting legal proceedings to oust him, he, the appellant, peaceably, and without condition, contract, or reservation, surrendered possession to Cresswell, the rightful claimant, and this before the date of this trespass complained of. Whatever license the appellant might have had under his former contested entry absolutely ceased upon the final decision by the secretary of the interior and the surrender by him as above stated to Cresswell.

The case of *Rathbone v. Boyd*, 30 Kas. 485, cited by appellant's counsel, cannot be applied to the facts in this case, for in that case no surrender was had or possession was given, nor had the party been ousted by process of law, until after the crop had matured, been gathered and disposed of by the defeated entry man, Brock. In this case the land had been surrendered, the appellant had gone out of possession, and Cresswell had, with the consent of appellant, entered, without any contract or reservation as to the crop, and while the same was yet growing upon the land, and not, as in the case cited, after the crop had been severed from the soil and sold.

The fact that appellant may have honestly believed that he had a legal right to go upon the land and gather the crop will not protect him and make his act less a trespass; but the statement of facts does not show the honest motive claimed for him by counsel. A person acting under such honest motives would not wait until Cresswell was absent, and, taking advantage of such absence, hastily cut and remove such grain from the premises, so as to get it away without any opposition on the part of Cresswell.

The opinion of the court was delivered by

HORTON, C. J.: This was a criminal action in the court below against A. J. Salisberry, under § 1 of chapter 113, Gen. Stat. of 1889, ¶ 7157, being the act to prevent trespasses, in which he was charged with having cut and carried away 14 acres of rye, to which he had no right or interest, the same being the property of Jasper Cresswell. The defendant was convicted at the September term, 1891, and this appeal is brought to reverse the judgment. The facts are substantially as follows: During 1879, Salisberry placed a preëmption filing upon the land from which he cut the rye, and continued to occupy the same thereunder until the 5th day of August, 1882, at which time he relinquished to the United States his interest therein, under the preëmption filing, but on the same day he placed a homestead filing thereon. At the time of the homestead entry, the defendant was qualified to homestead

land under the laws of the United States. Under his homestead filing, he immediately took possession of the land, and was continuously in the exclusive possession thereof until the 31st day of January, 1891. After the 5th day of August, 1882, Jasper Cresswell filed a contest upon the land. On the 31st day of January, 1891, the secretary of the interior decided the contest in favor of Cresswell. During the season of 1890, while defendant was in the actual possession of the land, under his homestead filing, contesting and litigating with Cresswell, and endeavoring to perfect his title, he sowed the rye, and when it ripened, in the month of June, 1891, in the absence and without the consent of Cresswell, he cut and carried the rye away. Cresswell, with the consent of Salisberry, had taken actual and exclusive possession of the land and crop in March, 1891.

It was decided in *Freeman v. McLennan*, 26 Kas. 151, that crops sowed on land by a stranger to the title, and without authority and consent of the owner, belonged to the owner of the soil. The right or title Salisberry claimed at the time he sowed the rye was subsequently decided against him. After this decision, and in March, 1891, Salisberry relinquished the possession of the land to Cresswell, and Cresswell took peaceable possession thereof. At the time that Salisberry cut and carried away the rye, it is conceded that the land on which it was grown was not his own, and that he had no interest or right therein. We do not think he had any right or interest in the rye grown on the land after Cresswell took possession thereof, in March. The decision in the contest established that Salisberry was never entitled to the land; his alleged title was no title; therefore, under the provisions of ¶ 7157, he was properly convicted. (*The State v. Armell*, 8 Kas. 288; *The State v. Blakesley*, 39 id. 152; *Haag v. Cooley*, 33 id. 390.)

It cannot be claimed upon the facts agreed to that Salisberry was a tenant or lessee, or had any rightful possession from Cresswell. The case of *Rathbone v. Boyd*, 30 Kas. 485, is not analogous. In that case, the party making the entry

not only sowed the crop, but remained in possession of the land until the crop was actually harvested, and after it was harvested his mortgagee sacked and took possession of it. If, in this case, Salisberry had continued in possession of the land after the rye had been cut and harvested, the Rathbone case would apply.

The judgment of the district court will be affirmed.

All the Justices concurring.